UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. _____

| | |
|---|---|
| Al Nawas Gampong, on behalf of himself and all those similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Flanigan's Management Services, Inc. and Richard Eaton,<br><br>Defendants. | **(Class Action and Collective Action)** |

# COMPLAINT FOR INDIVIDUAL, COLLECTIVE, AND CLASS RELIEF

## INTRODUCTION

1. Plaintiff Al Nawas Gampong brings this action, on his own behalf and on behalf of similarly situated employees at Flanigan's Seafood Bar and Grill restaurant in Coconut Grove, Florida (the "Restaurant"), under the Fair Labor Standards Act ("FLSA"), the Florida Minimum Wage Act ("FMWA"), and Art. X, Sec. 24 of the Florida Constitution[1], to recover back wages, liquidated damages and other relief against Defendants Flanigan's Management Services, Inc. ("Flanigan's) and Richard Eaton ("Eaton").

2. During the relevant time, Defendants paid Gampong and similarly situated employees a subminimum wage under FMWA, which allows tipped employees "meeting eligibility requirements for the tip credit under the FLSA" to be paid $3.02 less than the Florida minimum wage. Fla. Const. art. X, § 24(b).

---

[1] Fla. Const. Art. X §24(f) declares an "inten[tion] that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations." Id. § 24(f). That subsection reflects that the Wage Amendment should operate like the federal minimum wage law. Id. § 24(f); *see In re Advisory Opinion to the Atty. Gen. re Florida Minimum Wage Amend.*, 880 So. 2d 636, 641 (Mem) ("point[ing] out that the . . . amendment . . . incorporates a reference to the entire body of law under the FLSA"). Accordingly, the body of law that encompasses the FLSA is likewise applicable to the FMWA.

3. Defendants willfully committed federal and state minimum wage and overtime violations because they improperly encouraged, suffered and/or permitted Gampong and similarly situated employees to perform non-tipped work "off the clock" at the beginning and end of their shifts without compensation.

4. This "off the clock" non-tipped work, including cleaning and wrapping silverware, refilling condiment bottles, setting tables and prepping the bar, routinely took longer than 30 consecutive minutes and, when considered in conjunction with their on-the-clock non-tipped work, routinely accounted for more than 20% of Gampong and similarly situated employees' weekly work-time. Accordingly, Defendants were required to compensate Gampong and similarly situated employees at the full Florida minimum wage, not the subminimum tipped wage, for their non-tipped work time.

5. Flanigan's managers – including Defendant Richard Eaton, the General Manager – also periodically falsified the time records of Gampong and similarly situated employees to falsely reflect fewer than forty hours worked in a work week.

6. As a result of this unrecorded and uncompensated work time, Defendants failed to pay Gampong and similarly situated employees (1) the full state minimum wage for non-tipped work accounting for more than 20% of their weekly work-time [Invalid Tip Credit]; (2) the appropriate state minimum wage for the unrecorded hours-worked [Minimum Wage]; and (3) the appropriate overtime wage when their unrecorded hours-work caused their actual hours-worked to exceed forty in a work week [Overtime].

## PARTIES

7. Plaintiff Al Nawas Gampong is over 18 years old and has been a resident of Miami-Dade County, Florida, at all times material. Between June 3, 2024 and March 3, 2025, Gampong was employed as a front-of-the-house tipped server at a Flanigan's Seafood Bar and Grill restaurant in Coconut Grove, 2721 Bird Ave, Miami, Florida (the "Restaurant"). Gampong is an

"employee" of Defendants, as the term "employee" is meant by Section 3(e) of the FLSA, 29 U.S.C. 203(e), and the FMWA.

8. Gampong and all similarly situated employees are all non-exempt employees who worked for Defendants in the Restaurant, located in Coconut Grove, Florida, at any time during the applicable limitations period prior to the filing of this Complaint up to the present.

9. Defendant Flanigan's Management Services, Inc. is a corporation with its principal place of business at 5059 NE 18th Avenue, Fort Lauderdale, Florida, and does business as "Flanigan's Seafood Bar and Grill." Flanigan's employed Gampong and all similarly situated employees, as meant by Section 3(d) of the FLSA, 29 U.S.C. 203(d) and the FMWA.

10. Flanigan's may be served through its registered agent, Jeffrey Kastner, at 5059 NE 18th Avenue, Fort Lauderdale, Florida.

11. Defendant Richard Eaton, at all times hereinafter mentioned, has been the General Manager of the Restaurant in Coconut Grove and has been vested with and exercised control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices of the Restaurant. Accordingly, Defendant Eaton is an employer of Gampong and all similarly situated employees, as meant by Section 3(d) of the FLSA, 29 U.S.C. 203(d) and the FMWA.

12. Upon information and belief, Eaton is a citizen and resident of Florida, and Gampong is unaware of his home address.

13. Defendants implemented uniform pay, tip, and time-keeping practices at the Restaurant that apply to all non-exempt tipped employees.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over Gampong's federal question claims pursuant to 28 U.S.C. §1331 and 26 U.S.C. §201, *et seq.*, and supplemental jurisdiction over Gampong's claims arising under Florida law pursuant to 28 U.S.C. § 1367 and/or 28 U.S.C. § 1343.

15. Personal jurisdiction exists because the majority of acts or omissions in this dispute occurred within Miami-Dade County.

16. Venue in this Court is proper under 28 U.S.C. §1391(b)(ii) because Defendants transact business in this District, and because Gampong and similarly situated employees worked in Miami-Dade County and were paid in Miami-Dade County.

17. Gampong fulfilled all conditions precedent required to bring these claims under the FMWA. More specifically, on January 10, 2025, Gampong, through his counsel, served Flanigan's with a written pre-suit demand notice regarding Gampong's FMWA claims, requesting Defendant to pay the minimum and overtime wages owed to him. This letter described Flanigan's practice of encouraging off-the-clock work and improperly claiming a tip credit.

18. As of this lawsuit's filing, Flanigan's refused to pay Gampong the wages identified in Gampong's pre-suit notice.

## FLSA COVERAGE

19. Flanigan's Management Services, Inc. and Richard Eaton are an enterprise covered by the FLSA because they are engaged in commerce and in the production of goods for commerce, in that Defendants have at least two or more employees engaged in commerce and in the production of goods for commerce, and two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

20. During all time periods pertinent hereto, Defendants' employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, rice, beer, Corona Extra, Corona Light, vodka, Jack Daniels whiskey, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, zucchini, wings, mahi mahi, salmon, onions, peppers, crab, shrimp, beef, steak, potatoes, bread, hot sauce, BBQ sauce, cheese, buns, jalapenos, celery sticks, lobster broth, yellowfin tuna, plum tomatoes, cauliflower, avocados, salt, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, mints, flour, sugar, coffee, tea, soda, water bottles, and other materials that had previously traveled through interstate commerce.

21. Defendant Flanigan's Management Services, Inc. had annual gross revenues over $500,000.00 in 2022, 2023 and 2024 and is expected to gross in excess of $500,000.00 in 2025.

## GENERAL FACTUAL ALLEGATIONS

### The Restaurant's Operations

4

28. The Restaurant is a full-service restaurant, open daily from 11 a.m. to 4:30 a.m. The Restaurant employs front-of-house servers and hosts, cooks, dishwashers, bartenders, and assistant managers, all of whom ultimately report to the Restaurant's General Manager, Defendant Richard Eaton.

29. Servers, hosts, food runners, cooks, dishwashers, and bartenders are paid on an hourly basis and are not exempt from overtime pay under the FLSA.

30. Defendants' usual practice is to schedule Gampong and similarly situated employees for 4 to 5 shifts per week which, on paper, amount to less than forty scheduled hours. Defendants instruct Gampong and similarly situated employees that they are not allowed to record more than forty hours of work in a week.

31. In practice, however, Gampong and similarly situated employees cannot walk out the door the moment their scheduled shift ends. Instead, Gampong and similarly situated employees must stay and work until all of their assigned tables have cashed out and all of their required side work is completed. As such, Gampong and similarly situated tipped employees often work many hours in excess of their "scheduled" work hours.

32. The Restaurant has multiple shift options for servers and bartenders, including an opening shift, lunch shift, dinner shift, and a closing shift.

33. The dinner and closing shifts—particularly on the weekends—are more lucrative for tipped employees. Customers tend to order more expensive meals and purchase more alcoholic beverages during these shifts, making their bills higher such that tipped employees' tips are higher.

34. In contrast, the opening and lunch shifts are less lucrative because no tips can be earned until tables are sat starting at 11:00 a.m., and customers tend to spend less and drink less at lunch.

35. In addition to serving customers directly ("tipped work"), Defendants require servers and bartenders to perform related duties that are not themselves directed toward producing tips ("non-tipped work").

36. As needed during their shifts, Defendants require servers and bartenders to perform non-tipped work including cleaning and wrapping silverware, refilling condiment bottles, setting tables, prepping the bar, and making coffee. Upon information and belief, while assigned to serve

5

tables, servers and bartenders spend approximately 10 minutes each work hour performing non-tipped work.

37. Defendants require servers and bartenders on the opening shift to perform non-tipped work *before* being assigned a table. Gampong often worked the opening shift, and both Gampong and other servers on the opening shift routinely spent between 45 and 90 consecutive minutes performing non-tipped work before receiving their first table.[2]

38. Defendants require servers and bartenders on all shifts to perform non-tipped work *after* their last table has closed its tab. This closing non-tipped shift work takes, on average, between 45 and 90 consecutive minutes.

39. Gampong and similarly situated employees routinely spend more than 20% of their weekly work time engaged in non-tipped work.

40. Servers receive a reduced minimum wage that includes a $3.02 tip credit. Upon information and belief, Flanigan's also takes a tip credit against the hourly rate for bartenders.

41. Between September 30, 2019 and September 29, 2022, Defendants paid their tipped employees $6.98, reduced from the applicable Florida minimum wage of $10.00.

42. Between September 30, 2022 and September 29, 2023, Defendants paid their tipped employees $7.98, reduced from the applicable Florida minimum wage of $11.00.

43. Between September 30, 2023 and September 29, 2024, Defendants paid Gampong and their tipped employees $8.98, reduced from the applicable Florida minimum wage of $12.00.

44. From September 30, 2024 to the present, Defendants paid Gampong and their tipped employees $9.98 or $10.00, reduced from the applicable Florida minimum wage of $13.00.

45. Since Defendants hired Gampong on June 3, 2024, Defendants paid Gampong less than the full Florida minimum wage by availing themselves of the $3.02 hourly "tip credit" available to Florida employers for employees who qualify as "tipped employees" as defined by Section 203(m) of the FLSA. 29 U.S.C. § 203(m); 29 U.S.C. § 206(a)(1)(c); *see* FMWA, Fla. Stat. § 448.110.

---

[2] Upon information and belief, at some point in the last five years, Defendants paid servers for non-tipped opening shift work at the higher Florida minimum wage; however, Defendants stopped this practice on or about December 2024 and pays its servers the tipped wage for all hours worked, including time spent performing non-tipped opening and closing shift work.

46. Similarly, Defendants have paid the same tipped wage to all similarly situated tipped employees who worked for them in the five years preceding this lawsuit.

47. Flanigan's monitors employee labor costs, which are materially increased by any incurred overtime. Rather than properly manage employee work, Richard Eaton, the General Manager of the Restaurant, has implemented a policy and practice to have hourly employees perform off-the-clock work. Eaton has been employed as the General Manager of the Restaurant for more than five years.

48. Within the last three years, Eaton directly told servers that they were prohibited from recording more than forty hours of work in a week and must instead reduce their recorded time to avoid incurring any overtime premium.

49. Within the last three years, Eaton announced at a front-of-house staff meeting that servers should clock out after their last table paid and then do their closing non-tipped shift work off-the-clock, so that their time records will falsely reflect that the servers worked less than forty hours a week.

50. When a server recorded more than forty hours of work in a week, Eaton would punish the server by reducing the server's hours or scheduling the server to work less profitable shifts (*i.e.*, weekday lunch and opening shifts).

51. As a result, hourly personnel at the Restaurant regularly performed off-the-clock work through the following:

   a. Servers would clock out after closing out all of their assigned tables, then continue to perform required "side work," like wrapping silverware, folding napkins, and refilling condiment bottles, while not clocked in. This activity resulted in approximately 45 to 90 minutes of off-the-clock work per shift.

   b. Servers would arrive between 45 and 90 minutes before the Restaurant opened to customers to perform prep work. Servers would not be clocked in while performing this activity. Servers would then clock in when they were assigned their first table, even though they had already spent 45 to 90 minutes performing non-tipped work.

  c. Servers would also ask Eaton or an assistant manager to cut their time by changing their clock-in or clock-out time to avoid incurring overtime. Upon information and belief, Flanigan's time management system will show frequent downward revisions to hourly employee working time as a result of this practice. Flanigan's knew that these revisions were improper but nonetheless implemented them.

  d. On other occasions, Flanigan's managers, including Eaton, would unilaterally change the recorded hours of Gampong and similarly situated tipped employees to falsely reflect fewer than forty hours in a week without notifying the employee. Flanigan's managers, including Eaton, falsified time records to avoid censure from the corporate office, which stressed the importance of keeping labor costs low.

52. Defendants encouraged off-the-clock work, especially for their tipped employees who worked full-time. Defendants instructed and/or knowingly allowed employees to not "clock-in" and/or "clock out" when their recorded hours neared forty hours in a work week because Defendants did not want to pay the overtime premium wage required by the FLSA. For this reason, Defendants encouraged and/or suffered or permitted their tipped employees to work more than forty hours a week without recording all hours worked or paying the overtime premium required.

53. If Gampong or a similarly situated tipped employee did log more than forty hours of work in a week, Defendants would punish Gampong or the similarly situated tipped employee by scheduling them for fewer shifts or less lucrative shifts the next week.

54. The off-the-clock non-tipped work, including cleaning and wrapping silverware, refilling condiment bottles, setting tables and prepping the bar, routinely took longer than 30 consecutive minutes and, when considered in conjunction with their on-the-clock non-tipped work, routinely accounted for more than 20% of Gampong and similarly situated employees' weekly work-time. Accordingly, Defendants were required to compensate Gampong and similarly situated employees at the full Florida minimum wage, not the subminimum tipped wage, for their non-tipped work time.

55. Because Defendants did not pay their tipped employees for all of their hours worked, including a significant number of unrecorded hours performing non-tipped work, the FLSA and FMWA require Defendants to pay Gampong and all similarly situated employees: (1) the full Florida minimum wage for all "off-the-clock" hours worked up to forty hours a week, (2) the difference between the full minimum wage and the tipped wage paid for all "clocked" hours worked doing non-tipped work, and (3) the overtime wage for all hours worked over forty in a work week.

### Can 216(b) Collective Action Allegations

56. Gampong is similarly situated to other hourly employees at the Restaurant, who were improperly denied overtime compensation because of Flanigan's unlawful practice of requiring off-the-clock work.

57. Gampong seeks to certify the following collective action:

> All current and former non-exempt employees who worked for the Restaurant in the last three years preceding this lawsuit who were not paid one-and-a-half their regular rate of pay for hours worked over forty in a work week.

46. Gampong and the proposed FLSA collective members were subjected to the same failure to be paid overtime wages for hours worked over forty in a workweek in violation of the FLSA, 29 U.S.C. § 207.

47. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

48. There is interest in the collective treatment of these claims. Multiple similarly situated employees, all of whom worked at the Restaurant as non-exempt employees within the last three years, have already opted into this litigation.

49. Upon information and belief, the number of employees in the putative collective action is more than 100.

### Class Action Allegations

50. Gampong also sues on his own behalf and on behalf of a class of persons under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

9

51. Gampong seeks certification of two separate classes under Fed. R. Civ. P. 23, the FMWA, and Florida Constitution for Florida Minimum Wage (the "Putative Classes"), as follows:

    a. **Florida Minimum Wage Class – Uncompensated Off-the-Clock Work**: All non-exempt employees who worked for Defendants at the Restaurant the last five years preceding this lawsuit to the entry of judgment in this case (the "Class Period") for whom Defendants did not record all of their hours worked and did not compensate them at all for this unrecorded time.

    b. **Tip Credit for Non-Tipped Work Class**: All tipped employees who worked for Defendants during the Class Period who were paid less than the full Florida minimum wage for non-tipped work, in any workweek in which non-tipped work accounts for more than 20% of total hours worked per week.

50. The precise size and identity of each Putative Class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants; however, Gampong believes the total number of class members in each Putative Class above exceeds 100 employees.

51. The number of current and former employees whose rights under the FMWA have been violated by Defendants is so numerous that a separate joinder of each employee is impracticable.

52. Joining all the Putative Class members to this lawsuit is impracticable because, upon information and belief, there are over 100 current and former employees whose rights under the FMWA have been violated by the Defendants as a result of the Defendants' willful failure to record and compensate servers for all hours-worked, resulting in Defendants paying them below the required state minimum wage.

53. The facts in this lawsuit alleged by Gampong are all similar or to the facts the Putative Class can allege against Defendants. The proposed classes are limited to the Restaurant, which is overseen by Eaton.

54. The basis for Gampong's claims and the proposed class share a common factual basis. Eaton subjected Gampong and the class members to an unlawful reduction in their wages by requiring them to work off-the-clock as part of his policy or practice of requiring off-the-clock work.

55. Gampong is an adequate representative of the class members because his interests do not deviate from the class members regarding his claim for unpaid wages and recovery of the tip credit.

56. Defendants acted or refused to act on grounds generally applicable to the Putative Class, thereby making appropriate final injunctive relief or corresponding declarative relief with respect to the Class as a whole.

57. Specifically, Defendants failed to pay the full Florida minimum wage to tipped workers (1) for non-tipped work that exceeded 20% of the worker's total weekly hours and (2) after failing to provide the requisite "tip credit" notice following annual increases in the Florida minimum wage.

58. Application of this policy or practice does/did not depend on the personal circumstances of Gampong or those joining this lawsuit. Rather, the same policy or practice which resulted in the non-payment of minimum wages to Gampong applied and continues to apply to all class members.

59. Gampong is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

60. Gampong has the same interest in this matter as all other members of the Putative Class and Gampong's claims are typical of the Putative Class.

61. There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

   a. whether Defendants employed the members of the Class within the meaning of Article X, Section 24 of the Florida Constitution;
   b. whether the Defendants failed to keep true and accurate time records for all hours worked by Gampong and members of the Class;
   c. what proof of hours worked is sufficient where employers fail in their duty to maintain accurate time records;
   d. whether members of the Class performed non-tipped work accounting for 20% or more of their weekly work time in one or more workweek;

    e. whether Defendants failed and/or refused to pay the members of the Class at least the Florida Minimum Wage for non-tipped work accounting for 20% or more of their weekly work time in one of more workweeks;

    f. whether Defendants provided the requisite "tip credit" notice to members of the Class following

    g. whether Defendants' failure and/or refusal to pay the members of the Class at least the Florida Minimum Wage was willful, intentional, or done with reckless disregard for the rights of Class members;

    h. whether Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements and attorney's fees; and, finally,

    i. whether Defendants should be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## COUNT I
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (Overtime)
### Collective Action Against Defendants

62. Gampong incorporates the allegations in Paragraph Nos. 1-61 as if fully restated here.

63. Gampong is a statutory employee within the meaning of the FLSA.

64. Flanigan's is a statutory employer within the meaning of the FLSA.

65. Eaton is a statutory employer within the meaning of the FLSA.

66. Defendants violated the FLSA by failing to pay Gampong and similarly situated employees for all hours worked in excess of 40 hours.

67. Gampong is similarly situated to and seeks to certify a collective of all current and former non-exempt employees who worked for the Restaurant in the last three years preceding this lawsuit who were not paid one-and-a-half their regular rate of pay for hours worked over forty in a work week.

68. Gampong and the proposed FLSA collective members were subjected to the same failure to be paid overtime wages for hours worked over forty in a workweek in violation of the FLSA, 29 U.S.C. § 207.

69. The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

70. There is interest in the collective treatment of these claims. The following similarly situated employees, all of whom worked at the Restaurant as non-exempt employees within the last three years, have already opted into this litigation:

    a. Maxwell Morris
    b. Crystal Delahoya
    c. Briana Everett

71. Flanigan's intentionally and/or knowingly allowed Gampong and similarly situated employees to work "off the clock" or otherwise reduced their recorded hours-worked to falsely limit their overtime liability.

72. Gampong and the collective are entitled to one and one-half times their regular rates for every such hour they worked over forty in a work week, liquidated damages, pre-judgment interest, and their reasonable attorneys' fees and costs.

## COUNT II
### VIOLATIONS OF THE FMWA (Minimum Wage)
### Class Action Against Defendants

73. Gampong incorporates the allegations in Paragraph Nos. 1-61 as if fully restated here.

74. Gampong is a statutory employee within the meaning of the FLSA.

75. Flanigan's is a statutory employer within the meaning of the FLSA.

76. Eaton is a statutory employer within the meaning of the FLSA.

77. Defendants paid Gampong below Florida's statutory minimum wage.

78. Defendants' basis for paying below Florida's statutory minimum wage is that it took a tip credit of $3.02.

79. Defendants cannot claim a tip credit for Gampong and other members of the putative class because Defendants regularly required employees to perform non-tipped work before and after their shifts which Defendants did not record and for which Defendants did not pay them at all. Plaintiff and the Class are entitled to the full Florida minimum wage for all such hours, up to forty hours in a work week.

80. Gampong seeks to certify the following class:

> All non-exempt employees who worked for Defendants at the Restaurant the last five years preceding this lawsuit to the entry of judgment in this case (the "Class Period") for whom Defendants did not record all of their hours worked up to forty hours in a week and did not compensate them at all for this unrecorded time.

81. By failing to pay minimum wages, Defendants have violated, and continue to violate the FMWA.

82. The conduct described throughout this Complaint constitutes a willful violation of the FMWA.

83. Flanigan's knew that it was required to pay its employees at least the requisite minimum wage for all hours worked.

84. Flanigan's has engaged in a widespread pattern, policy, and practice of violating the FMWA. These practices applied generally at the Restaurant and does not depend on the personal circumstances of the class members. Rather, the same practices which result in the nonpayment of minimum wages to class members apply to all class members.

85. Gampong, on behalf of himself and the class members, therefore seeks to recover $3.02 per hour worked and the applicable Florida minimum wage, liquidated damages, and reasonable attorneys' fees and costs.

86. As a result of Flanigan's willful violation of Fla. Stat, § 448.110, class members are entitled to an award of reasonable attorneys' fees and costs pursuant to Fla. Stat. § 448.110(6)(c)(1).

87. As a direct and proximate result of Flanigan's willful violations, class members are entitled to such legal or equitable relief as may be appropriate to remedy the violation, including, without limitation, liquidated damages, reasonable attorneys' fees and costs, pre-judgment interest, injunctive relief, and all other damages allowable under law.

88. Because Flanigan's violations of the FMWA have been willful, a five-year statute of limitations applies pursuant to Fla. Stat. § 95.11.

**COUNT III**
**VIOLATIONS OF THE FMWA (Tip Credit)**
**Class Action Against Defendants**

89. Gampong incorporates the allegations in Paragraph Nos. 1-61 as if fully restated here.

90. Gampong is a statutory employee within the meaning of the FLSA.

91. Flanigan's is a statutory employer within the meaning of the FLSA.

92. Eaton is a statutory employer within the meaning of the FLSA.

93. Defendants paid Gampong below the Florida statutory minimum wage.

94. Defendants' basis for paying below Florida's statutory minimum wage is that it took a tip credit of $3.02.

95. Defendants cannot claim a tip credit for Gampong and other members of the putative class because Defendants regularly required employees to perform non-tipped work before, during and after their shifts which amounts to more than 20% of their overall working hours. Gampong and the Putative Class are entitled to the full Florida minimum wage for all such hours, up to forty hours in a work week.

96. Gampong seeks to certify the following class:

> All tipped employees who worked for Defendants during the last five years preceding this lawsuit to the entry of judgment in this case (the "Class Period") who were paid less than the <u>full</u> Florida minimum wage for non-tipped work, in any workweek in which non-tipped work accounts for more than 20% of total hours worked per week.

97. By the conduct described in Paragraphs __ above, Defendants willfully and repeatedly violated the provisions of Florida Statute § 448.110 and the Florida Constitution's minimum wage requirements by failing to pay employees employed in an enterprise engaged in commerce or in the production of goods for commerce, the applicable minimum hourly rate for all hours worked.

98. Specifically, Defendants encouraged, required, and/or knowingly allowed Gampong and the Class to perform non-tipped work before, after and during their shifts which accounts for more than 20% of their total working time in a workweek. Under our Eleventh Circuit's interpretation of the Dual Job regulation (29 C.F.R. § 531.56(e)), such non-tipped work must be paid at the full applicable minimum wage, not the tipped wage. *Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (2021). Gampong and the Class are entitled to the difference between the full Florida

minimum wage and the tipped wage paid for all such hours, liquidated damages, pre-judgment interest, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Gampong requests the following relief:

a. Certification of this action as a class action pursuant to Red. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Putative Classes and appointing Gampong and his counsel to represent the Classes;

b. Certification of this action as a collective action on behalf of the Collective Action Members pursuant to 29 U.S.C. § 216(b);

c. An order compelling Defendants to produce in electronic format if available or, if not, in print, the names, employment dates, pay records, and last-known contact information of all members of the Collective and, further, authorizing Plaintiff to send notice of this action to all similarly situated individuals, including publication of notice of the lawsuit online, by email, by text message, and by other means in a manner reasonably calculated to apprise Collective Members of their rights and provide them the ability to join the lawsuit;

d. An order designating Gampong's counsel as representatives of the Collective and their undersigned counsel as Collective counsel;

e. An order declaring that the practices complained of herein are unlawful under the FLSA;

f. Application of the FLSA's three-year statute of limitations commensurate with Defendants' willful FLSA violations;

g. Application of the FMWA's five-year statute of limitations commensurate with Defendants' willful FMWA violations;

h. An order granting judgment in favor of Gampong, the Classes, and the Collective, and awarding the full amount of damages and liquidated damages available;

i. An award of prejudgment and post-judgment interest;

j. An award of Plaintiff's reasonable attorneys' fees and costs on behalf of Gampong and the class and collective;

   k.  Entry of injunctive relief declaring the conduct alleged in the Complaint violates the FLSA and FMWA; and

   l.  Such other and further relief as this Court deems just and proper.

Respectfully submitted, this 31st day of March, 2025.

              *s/ Alexander C. Meier*
              Lydia J. Chastain (*pro hac vice* forthcoming)
              Alexander Meier
              Fla. Bar No. 1011557
              LEE MEIER LAW FIRM
              695 Pylant Street NE, Suite 105
              Atlanta, Georgia 30306
              Telephone: (404) 474-7628
              lchastain@leemeier.law
              ameier@leemeier.law

              Elliot J. Siegel (*pro hac vice* forthcoming)
              KING & SIEGEL LLP
              724 South Spring Street, Suite 201
              Los Angeles, California 90014
              elliot@kingsiegel.com
              tel: (213) 465-4802
              fax: (213) 465-4803

              **COUNSEL FOR PLAINTIFF AND THE COLLECTIVE/PUTATIVE CLASS**