UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:25-cv-21494-KMM

Al Nawas Gampong, on behalf of himself and
all those similarly situated individuals,

        Plaintiff,

   v.

Flanigan's Management Services, Inc. and
Richard Eaton,

        Defendants.

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF
FLSA COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

Plaintiff Al Nawas Gampong ("Gampong"), pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), moves the Court to conditionally certify a collective action and to facilitate notice to potential collective members.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Flanigan's Management Services, Inc. operates 25 restaurants across South Florida known as Flanigan's Seafood Bar and Grill (the "Restaurants"). During the past three years, Flanigan's has employed hundreds to thousands of Servers and Bartenders at its Restaurants who perform similar duties and are subjected to similar timekeeping and payment practices that violate the FLSA. Specifically, Flanigan's has issued a corporate-wide mandate to Restaurant managers—both General Managers and Assistant Managers—to prevent hourly workers from recording overtime to keep labor costs low. Management bonuses and performance ratings are directly tied to this metric. Due to this pressure, Flanigan's Restaurants have a uniform and company-wide problem with their in-restaurant managers falsifying time records and encouraging

1

off-the-clock work to ensure hourly Servers and Bartenders do not report all hours-worked. As a result, these Servers and Bartenders have been denied applicable minimum wages for all hours worked and applicable federal overtime rate of pay for hours-worked over forty in a work week.

Plaintiff Gampong filed this collective/class action lawsuit seeking to recover all minimum and overtime wages that were unlawfully withheld from himself and other similarly situated Servers and Bartenders. On April 25, 2025, Lead Plaintiff Gampong and Opt-In Plaintiffs Maxwell Morris ("Morris"), Brianna Everett ("Everett"), Nathalie Gomez ("Gomez"), Larissa Macko ("Macko"), and Rachel Diaz ("Diaz") filed their Consents to Sue Under the FLSA. *See* ECF No. 15. Plaintiff now moves to conditionally certify the following collective of similarly situated Servers and Bartenders:

> **All current and former non-exempt Servers and Bartenders who worked at a Flanigan's Seafood Bar and Grill in the last three years preceding this lawsuit through the entry of judgment who were not paid one-and-a-half their regular rate of pay for hours worked over forty in a work week.**

Plaintiff surpasses the lenient burden for conditional certification because Flanigan's Servers and Bartenders: (i) performed substantially similar duties at the Restaurants within the past three years; (ii) worked in the same geographic location, i.e., South Florida; and (iii) were all subject to the same illegal timekeeping and payment policies. Other Servers and Bartenders have indicated their desire to join this lawsuit.

The Court should therefore grant conditional certification and approve notice to all Servers and Bartenders who were employed by Flanigan's during the previous three years (the "Collective"). *See Roman v. Burger King Corp.,* No. 1:15-CV-20455-KMM, 2015 WL 12881153, at *2 (S.D. Fla. June 2, 2015) (granting conditional certification for collective of trainees and coaches at Burger King restaurants nationwide); *Jiminez v. Pizzerias, LLC*, No. 1:15-CV-22035-KMM at D.E. 40 (S.D. Fla. December 2, 2016) (granting conditional certification for collective of

pizza delivery drivers employed by 31 Papa John's franchise stores in Florida); *Van Lehn v. Uncle Al's Sports Café Sunrise, Inc.,* S.D. Fla. Case No. 0:22-cv-61628-AHS at D.E. 28 (S.D. Fla. Nov. 15, 2022) (granting conditional certification for servers and bartenders); *Conrey v. Beach Boys of Ft. Lauderdale, LLC,* S.D. Fla. Case No. 0:22-cv-60843-HUNT at D.E. 47 (July 8, 2022) (granting conditional certification for servers and bartenders); *Didoni v. Columbus Restaurant, LLC,* 327 F.R.D. 475 (S.D. Fla. 2018) (granting conditional certification for restaurant workers); *Compere v. Nusret Miami, LLC,* 391 F.Supp.3d 1197 (S.D. Fla. 2019) (granting conditional certification for restaurant workers); *Campbell v. Pincher's Beach Bar Grill Inc.,* 2016 WL 3626219 (M.D. Fla. 2016) (granting conditional certification for servers and bartenders); *Stuven v. Texas de Brazil (Tampa) Corp.,* 2013 WL 610651 (M.D. Fla. Feb. 19, 2013) (granting conditional certification for servers and bartenders).

## II.   FACTS

### A.   Gampong and the Opt-Ins' Employment with Flanigan's

Gampong worked for Defendants as a Server at the Coconut Grove Restaurant from June 2024 to March 2025. *See* Declaration of Al Gampong ("Gampong Decl.") ¶ 2, attached as **Exhibit 1**. Gampong's primary duties and responsibilities as Server were substantially the same as the Bartenders at the Coconut Grove location and at all other Flanigan's locations: he served customers food and drinks in the restaurant and regularly engaged with customers to enhance their overall dining experience. *Id.* at ¶ 3. Flanigan's also required Gampong and other Servers to perform side work, including polishing silverware and glassware, maintaining the ice and service stations, sweeping floors, cleaning tables, and other tasks. *Id.* at ¶ 11.

During Gampong's employment, Richard Eaton worked as the Coconut Grove Restaurant's General Manager and oversaw its operations. *Id.* at ¶ 4. Eaton, as well as the assistant

managers, supervised Gampong, set his schedule, assigned his side work, and were otherwise responsible for managing Gampong and other Servers and Bartenders. *Id.* at ¶ 5. Eaton required Gampong to frequently arrive and start work at the Restaurant at least 45 minutes before the Restaurant was open to the public. *Id.* at ¶ 12. Throughout his shift, Gampong also had "running side work," including cleaning and setting tables, polishing plates and cups, that had to be completed even while he also served his customers. *Id.* at ¶¶ 11-12. He spent approximately 10 minutes an hour during his shift on this running side work. *Id.* at ¶¶ 11, 16. In addition, Eaton and other managers regularly required Gampong to clock-out after his last customer had paid and to continue performing non-tipped side work for an additional 45 to 90 minutes off-the-clock. *Id.* at ¶¶ 13-15. Gampong regularly spent more than 20% of each workweek performing side work and non-tipped duties. *Id.* at ¶ 17. When Gampong's recorded time in a week approached 40 hours, Eaton and the other managers would either require him to work off-the-clock or would falsify his time by "writing down" his hours. *Id.* at ¶ 10. If Gampong did record more than 40 hours of work in a week, Eaton and the managers would punish him by assigning him fewer shifts or less lucrative shifts in the following week. *Id.* at ¶ 9. As they did for all Servers and Bartenders, Defendants claimed the same tip credit for all of Gampong's hours of work, irrespective of the type of work he performed. *Id.* at ¶¶ 19-20.

Opt-In Plaintiff Maxwell Morris worked as a Server at the Restaurant from August 2023 through October 2024. *See* Declaration of Maxwell Morris ("Morris Decl.") attached as **Exhibit 2** at ¶ 2. Eaton supervised Morris, set his schedule, assigned him side work, and was otherwise responsible for managing Morris. *Id.* ¶ 4. Morris often worked the closing shift at the Restaurant, which is 10-14 hours long. Eaton, in addition to other managers, required Morris to clock out and stay and work at the Restaurant between 45 and 90 minutes after the Restaurant was closed to the

public to finish side work—he was only allowed to leave after his last table has closed its tab and completed all his non-tipped closing side work. *Id.* at ¶¶ 7-8. *Id.* at ¶¶ 10-13. Because of this practice, Morris worked more than 40 hours per week in many weeks, but the Restaurant did not record or pay him for these overtime hours worked. *Id.* ¶ 6. In addition, Morris performed about 10 minutes of side work – refilling and polishing silverware and cleaning – each hour during his shift. *Id.* at ¶¶ 8, 14. Accordingly, Morris regularly spent more than 20% of each workweek performing side work and non-tipped duties.

Opt-In Plaintiff Brianna Everett worked for Defendants as a Server from November 2023 through November 2024. *See* Declaration of Brianna Everett ("Everett Decl.") attached as **Exhibit 3** at ¶ 2. General Manager Eaton, among other managers employed by Defendant, supervised Everett, set her schedule, assigned her side work, and made decisions about when she clocked in and out. *See id.* at ¶ 4. When she first started working at the Restaurant, the managers would reduce the Servers' recorded hours so that the timekeeping records falsely reflected that they worked fewer than forty hours per week. *Id.* at ¶ 6. In addition, Eaton and other managers frequently required Everett to clock out and stay and work at the Restaurant at least 45 minutes after the Restaurant was closed to the public to finish side-work. *Id.* at ¶¶ 8-11. Everrett's managers threatened to give her and the other Servers fewer or less lucrative shifts if they didn't clock out to do their closing side work. *Id.* at ¶ 12. Everett spent 5 to 15 minutes an hour doing non-tipped side work during her 10-12 hour shifts, and would spend 30 to 90 minutes off the clock each shift doing non-tipped side work. *Id.* at ¶¶ 8, 14-15. Accordingly, Everett's non-tipped work accounted for more than 20% of her working time. Defendants claimed the same tip credit for all of Everett's hours of work as a Server, irrespective of the type of work she performed. *Id.* at ¶ 16.

Opt-In Plaintiff Nathalie Gomez worked for Defendants as a Server at the Coconut Grove location from May 2024 through January 2025, and as a Server, Bartender, Hostess and Take-Out/Food Runner at the Pinecrest, Doral, and Westchester locations between April 2019 and May 2024. *See* Declaration of Nathalie Gomez ("Gomez Decl.") attached as **Exhibit 4** at ¶ 2. At Coconut Grove, General Manager Eaton, among other managers employed by Defendant, supervised Gomez, set her schedule, assigned her side work, and were otherwise responsible for overseeing the payment of wages to Gomez and other Servers and Bartenders. *See id.* at ¶ 4. Eaton and other managers instructed the front-of-house employees, including Servers and Bartenders, to clock out after they had cashed out their last table then complete closing side work off the clock to avoid recording overtime. *Id.* at ¶¶ 6-8. Gomez would clock out and stay and work at the Restaurant at least 45 minutes after the end of her shift to finish required side-work. *Id.* at ¶¶ 9-13. Gomez's managers would give her and the other servers fewer or less lucrative shifts if they recorded more than forty hours in a week. *Id.* at ¶ 7. Flanigan's claimed the same tip credit for all of Gomez's hours of work as a Server, irrespective of the type of work she performed. *Id.* at ¶ 16. Gomez's managers required her to spend more than 20% of each workweek performing side work and non-tipped duties. *Id.* at ¶ 15. Gomez confirms that the practices and policies affecting her timekeeping and payment at Coconut Grove Restaurant were uniform at every Flanigan's Restaurant where she worked, including the Coconut Grove, Doral, Westchester, and Pinecrest locations. *Id.* at ¶ 17.

### B.    Declaration of Former Assistant Manager

Former Assistant Manager Jennie Nicholas has also submitted a sworn statement in support of this Motion. *See* Declaration of Jennie Nicholas ("Nicholas Decl.") attached as **Exhibit 5**. Nicholas was an Assistant Manager at both the Westchester and Pinecrest locations between early

2021 and December 2022. *Id.* at ¶¶ 4-6. She explains that Flanigan's had a corporate-wide policy that tied all middle managers' bonuses to low reported overtime and labor costs. *Id.* at ¶ 10. As such, General Managers and Assistant Managers were incentivized to underreport hours-worked by hourly staff members. *Id.* Nicholas also confirms that Flanigan's corporate office requires managers in every Flanigan's restaurant to ensure that hourly workers don't clock overtime. *Id.* at ¶¶ 8, 13. At weekly management staff meetings, the General Manager instructed Assistant Managers to clock out hourly staff before they reached forty hours, even if they hadn't finished their closing work. *Id.* at ¶ 9. She personally observed managers in both the Pinecrest and Westchester locations telling hourly Servers and Bartenders to clock out when they were close to forty hours and to keep working. *Id.* at ¶ 12. Nicholas testified that "all Flanigan's restaurants run by the same book and have to meet the same standards regarding labor costs and overtime." *Id.* at ¶ 14. Nicholas's testimony, combined with multiple opt-ins who worked at the Coconut Grove location and other Flanigan's locations and who experienced the same policy or practice, demonstrates that Servers and Bartenders at Flanigan's Restaurants were subjected to the same illegal timekeeping policies and payment practices.

## III.    MEMORANDUM OF LAW

### A.    Stage-One Conditional Certification is Lenient and Routinely Granted.

The FLSA authorizes collective actions against employers for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b). Section 216(b) provides that an action "may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* A plaintiff may bring a collective action on behalf of similarly situated persons subject to the requirements that prospective plaintiffs file a written consent in the court where the action is brought. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216

(11th Cir. 2001). A collective action brought under the FLSA can include only those plaintiffs who affirmatively opt-in to the action by filing their consent in writing. 29 U.S.C. § 216(b).

Courts in the Eleventh Circuit follow a two-tiered procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citation omitted). The first tier—referred to as the notice stage—involves the conditional certification of the class and notice to potential class members upon motion by the plaintiff. *See id.* (quoting *Hipp*, 252 F.3d at 1218). The burden is on the plaintiff only to show that there is a "reasonable basis" for the claim that there are other employees who: (1) are **similarly situated** with regard to their job requirements and pay provisions; and (2) **desire to opt-in** to the case. *See Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (emphasis added); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259-61 (11th Cir. 2008). The standard by which a court determines whether plaintiffs are similarly situated at this early stage is "fairly lenient [], and typically results in 'conditional certification' of a representative class." *Cameron-Grant*, 347 F.3d at 1243 n.2; *see Hipp*, 252 F.3d at 218 (because the court has minimal evidence at the first step of conditional certification, the determination is made using a lenient standard and typically results in conditional certification).

Courts commonly consider five factors at the conditional certification stage in determining whether members of a class are similarly situated: (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claims violations are similar. *See Rojas v. Garda CL Se., Inc*., 297 F.R.D. 669, 697 (S.D. Fla. 2013); *Smith v.*

*Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S. D. Fla. 2003); *Stone v. First Union Corp.*, 203 F.R.D. 532 (S. D. Fla. 2001). No single factor is dispositive. *Rojas*, 296 F.R.D. at 697. Plaintiff need "only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007).

The "similarly situated" requirement of the FLSA within 29 U.S.C. § 216(b) is more elastic and less stringent than the requirements of Rule 23 (as to class actions), Rule 30 (as to joinder), and Rule 42 (as to severance). *See id.* (*citing Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)). Plaintiff must show only a "reasonable basis" for his claim that there are other similarly situated employees. *Morgan*, 551 F.3d at 1260-61. This is a "modest" burden, Plaintiff need only produce "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *see also Butler v. Oak Street Mortg., LLC*, 2006 WL 5519070 at *2 (S.D. Fla. Dec. 22, 2006); *McClean v. On the Half Shell, Inc.*, 2018 WL 8578016, *3 (M.D. Fla. Oct. 24, 2018) ("Plaintiffs' burden at the conditional class certification stages requires only a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.").

### B.   The Servers and Bartenders at the Restaurants are "Similarly Situated" Under the Lenient Conditional Certification Standard

Plaintiff easily satisfies the low stage-one conditional certification standard, and every factor favors granting conditional certification.

#### 1.   The Collective all Hold the Same Job Titles: Server and Bartender

Plaintiff seeks conditional certification of a class consisting of Servers and Bartenders. The evidence shows that both Servers and Bartenders at Flanigan's Restaurants serve food and

beverages and regularly engage with customers to enhance their overall dining experience. *Gampong Decl.* at ¶ 3. Both Servers and Bartenders are also required to perform a variety of side work and closing side work, including polishing silverware and glassware, maintaining the ice and service stations, sweeping floors, cleaning tables, and other tasks. *Id.* at ¶ 11; Gomez Decl. at ¶ 8. Although the Collective includes employees with two different titles, courts in this district and beyond have recognized that the difference between "Servers" and "Bartenders" are unimportant at this conditional certification stage. *See, e.g., Stuven*, 2013 WL 610651 at *4 ("At this stage of the litigation, what the employee serves – food or beverages – is a minor distinction")); *Alequin v. Darden Restaurants, Inc.*, 2013 WL 3939373, *8 (S.D. Fla. July 12, 2013) (granting conditional certification for servers and bartenders); *Van Lehn*, S.D. Fla. Case No. 0:22-cv-61628-AHS at D.E. 28 (same); *Conrey*, S.D. Fla. Case No. 0:22-cv-60843-HUNT at D.E. 47 (same); *Campbell*, 2016 WL 3626219 (same); *see Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 73 (E.D.N.Y. 2016) (noting that the fact that there may be "variations in positions and job functions" among the proposed class "does not, at this preliminary stage, change the result").

**2.      Plaintiffs Worked in the Same Geographic Location: South Florida**

Plaintiffs move for conditional certification of Servers and Bartenders in South Florida, specifically, the twenty-five Restaurants located in Broward, Palm Beach, Martin, and Miami Dade counties.[1] A similar geographic location weighs in favor of conditional certification, but this factor by itself is "not conclusive." *Hipp*, 252 F.3d at 1219. The Eleventh Circuit has previously upheld conditional certification of nationwide classes or classes whose members span several

---

[1] *See* Flanigan's locations, *available at*: https://www.flanigans.net/locations/ (last accessed April 25, 2025).

states. *See Morgan,* 551 F.3d at 1241 (upholding nationwide class of chain store managers); *see also Hipp,* 252 F.3d at 1219; *Grayson,* 79 F.3d at 1091. Nonetheless, the fact that Plaintiffs here move for the conditional certification of a class of Servers and Bartenders limited to only a portion of Florida weighs in favor of certification.

### 3. The Alleged Violations Occurred During the Same Period

Plaintiff has limited the temporal scope of this action to the three years prior to the filing of the Complaint, the FLSA statute of limitations, and this Court has repeatedly certified FLSA collective actions covering equivalent periods. *See Alequin,* 2013 WL 3939373 at *6 (conditionally certifying class for three years of overtime and tip credit violations); *Bennett v. Hayes Robertson Group, Inc.,* 880 F. Supp. 2d 1270, 1276 (S.D. Fla. 2012) (conditionally certifying class for two years of overtime violations); *Peralta v. Greco Intern. Corp.,* 2011 WL 5178274, at *4 (S.D. Fla. Oct. 31, 2011) (approving collective action for work performed over a three-year period). Thus, this third factor likewise favors conditional certification.

### 4. The Collective Members Were Subjected to the Same Unlawful Policies and Procedures

Plaintiff challenges Defendants' practice of reducing Servers and Bartenders' hours and requiring Servers and Bartenders to perform off-the-clock non-tipped side work, both done to falsely record that each Server and Bartender worked fewer than forty hours per week. This illegal practice caused FLSA violations for hundreds to thousands of employees because Servers and Bartenders were not compensated at all for unrecorded hours-worked and were not compensated at one-and-a-half their regular rate for hours worked over forty per week. Gampong, Morris, Everett, and Gomez all report that this was Defendants' standard practice, uniformly applied to all Servers and Bartenders at the Coconut Grove Restaurant. *See* **Ex. 1** at ¶¶ 6-10; **Ex. 2** at ¶¶ 6-13; **Ex. 3** at ¶¶ 6-14; **Ex. 4** at ¶¶ 6-13.

Moreover, Gomez reports that she was subjected to an identical practice at three other Flanigan's Restaurants, in Pinecrest, Westchester and Doral. **Ex. 4** at ¶¶ 6, 17. Former Assistant Manager Nicholas confirms that the practice stemmed from a corporate-wide mandate to in-restaurant managers to keep labor costs low, and that all Flanigan's Restaurants "run by the same book." **Ex. 5** at ¶¶ 8-13. The evidence shows Defendants uniformly underreported hours-worked for every member of the waitstaff, regardless of whether they were a Server or Bartender. *See id.* Courts commonly grant conditional certification in FLSA restaurant cases where tipped employees provide evidence of unlawful pay policies. *See Brock v. 50 Eggs, Inc.*, 2016 WL 10933025 at, *2 (S.D. Fla. 2016) (granting conditional certification even where restaurant denied that it imposed unlawful policy on servers); *Didoni,* 327 F.R.D. 475 (granting conditional certification for servers and bartenders).

Flanigan's may claim that its official policy is to pay employees for all time worked and that the implementation of its aversion to allowing employees to incur overtime is not sufficiently uniform. Multiple declarations from Flanigan's personnel show otherwise. Moreover, "[a] unified policy, plan, or scheme of discrimination [or wage violation] may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Hipp,* 252 F.3d at 1219 (quoting *Grayson,* 79 F.3d at 1095) (emphasis added). "Plaintiffs at the conditional-certification stage are therefore not required to demonstrate a unified, explicit scheme of FLSA violations, but rather must show only that they are similarly situated with respect to general workplace policies and practices." *Alequin,* 2013 WL 3939373 at *6. Gampong has done so here.

### 5.   The Same Actions Led to the Same FSLA Violations Across the Collective

Gampong and the opt-in Plaintiffs experienced the same FLSA violation across multiple Flanigan's locations, which likewise favors conditional certification. "If, as Plaintiffs have alleged

and shown, they are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that [Defendants] required or permitted them to do so, and that they were not paid statutory overtime that was otherwise due. Plaintiffs have satisfied their modest burden of showing these elements, notwithstanding the missing details on which [Defendants] would seize." *Alequin,* 2013 WL 3939373 at *6 (citing *Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d 1218, 1239 (S.D. Ala. 2008).

In summary, Plaintiff and all other Servers and Bartenders employed at any of Defendant Flanigan's twenty-five Restaurants in South Florida within the past three years are unified by a common theory of FLSA violations caused by Flanigan's unlawful underreporting of hours worked. *Didoni*, 327 F.R.D. at 480 (conditional certification of FLSA claims appropriate when servers were required to surrender a portion of tips to employer "common policy or plan that violated the law"); *see also Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 547 (6th Cir. 2006) (explaining that conditional certification of FLSA collective action is appropriate when plaintiffs make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy that violated the FLSA); *see also Chalker v. Burlington Coat Factory of FL, LLC*, 2013 WL 594784 at *1 (M.D. Fla. 2013) (employee may prove that he is similarly situated for the purpose of conditional certification if he shows that he is the victim of a corporately derived (and not isolated) policy or plan that violated the law along with the putative class); *Hernandez v. Starbucks Coffee Co.*, 0:09-CV-60073-WPD at D.E. 33 (S.D. Fla. April 24, 2009) (conditionally certifying collective of store managers at all Starbucks' stores where plaintiff alleged company-wide pay policy that results in store managers being improperly classified as exempt under the FLSA); *see also Robinson v. Sailormen, Inc*., 2016 WL 11528450, *5 (N.D. Fla.

13

November 18, 2016) (explaining that the 11th Circuit has never defined the term "similarly situated" for purposes of FLSA actions, and that courts typically require the Plaintiffs only to show his position was similar – not identical – to those of the putative class, which is a lower standard).

Because the Court does not make credibility determinations or conduct individualized inquiries at the conditional certification phase, Plaintiff's evidence alone is enough for the Court to grant conditional certification. *See Hipp*, 252 F.3d 1219 (rejecting employer's contention that each potential class member was unique and required an individual analysis of their working conditions); *see also McClean*, 2018 WL 8578016, at *4 (factual issues are not considered at the notice stage of conditional certification); *Peña v. Handy Wash, Inc*., 28 F. Supp. 3d 1289, 1300 (S.D. Fla. 2014) ("Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make creditability determination" at stage-one conditional certification).

### C.       Other Employees Want to Join the Collective.

With respect to the second requirement for conditionally certifying a class, a plaintiff must show that there are other employees who would opt-in, if given notice. *See Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003). "The existence of just one other co-worker who desires to join in is sufficient to raise the Plaintiff's contention beyond one of pure speculation . . . [c]ourts in this district have conditionally certified classes with as few as two affidavits from potential Plaintiffs." *See e.g., Garcia v. J&J, Inc*., 2019 WL 3457613 at *3 (S.D. Fla. July 31, 2019) (*quoting Rojas*, 297 F.R.D. at 677); *see also Benjamin v. Right Path Behavioral Health Servs. LLC*, 2018 WL 922350, at *3 (M.D. Fla. February 7, 2018) ("Considering the fairly lenient standard, the two opt-in plaintiffs, and the three declarations, the Court finds that the Plaintiff has satisfied his burden of demonstrating a reasonable basis for his claims that there are other similarly situated [employees]"); *Wynder v. Applied Card Sys., Inc*., No. 09-80004, 2009

14

WL 3255585 (S.D. Fla. Oct. 7, 2009) (granting conditional certification of FLSA collective action based on two affidavits: one of the single-named plaintiff and one opt-in plaintiff); *Teahl v. The Lazy Flamingo, Inc*., 2015 WL 179367, at *6 (M.D. Fla. January 14, 2015) ("Upon consideration of the lenient standard, two opt-in plaintiffs, and … [a] declaration, there is a reasonable basis to believe that there are other employees who may desire to opt-in"); *Compere*, 391 F.Supp.3d 1197 (granting conditional certification where plaintiff's affidavit and one other affidavit claimed that other similarly situated individuals would opt in to the action).

Here, Gampong and five Opt-In Plaintiffs have all indicated their desire to vindicate their rights under the FLSA as it pertains to the unlawful timekeeping and tip credit practices. *See* Exs. 1-4; Notice Opt-Ins, ECF Nos. 15-1 to 15-6. This evidence, alone, is sufficient to conditionally certify the Collective. *See, e.g., Garcia,* 2019 WL 3457613 at *3 (one additional opt-in sufficient); *Teahl*, 2015 WL 179367 (total of two opt-ins who performed similar job duties as servers and bartenders provided reasonable basis to believe other employees may desire to opt-in). In addition, Plaintiff Gampong also avers that he has personal knowledge of other current and former employees who wish to opt-in to this case, but may be hesitant to join until court-authorized notice is provided. Gampong Decl. ¶ 21, Ex. 1.

Plaintiff and Opt-in Plaintiffs have shown that this policy affects all Servers and Bartenders in the Restaurants, and other similarly situated Servers and Bartenders wish to join, further demonstrating that conditional certification should be granted.

## IV.    NOTICE: SCOPE, FORM AND DISTRIBUTION

In the interest of judicial economy, district courts have discretionary power to authorize the sending of notice to potential class members early in the litigation. *See Hoffman-La Roche Inc.*, 493 U.S. at 171. To facilitate this notice, district courts have authority to compel employers to

provide the names and addresses of potential Plaintiffs and to authorize the named Plaintiff to send court-authorized notice to potential opt-in Plaintiffs regarding the lawsuit and their statutory right to join. *Id*. The authority to supervise notice derives from the broad discretionary power to manage the judicial process. *Id.* at 169-72.

A.   **All Servers and Bartenders Employed by Defendant Flanigan's Within the Past 3 Years Should Receive Notice**

The FLSA allows employees to collect damages within a three-year limitations period if they can show, as alleged in the Amended Complaint, that an employer's FLSA violation was "willful." *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133 (1988); *McClean*, 2018 WL 8578016, at *4 (approving 3-year notice). Accordingly, notice should be provided to all Servers and Bartenders employed by Defendant Flanigan's during the past 3 years. *See Compere*, 391 F.Supp.3d at 1197.

B.   **Discovery and Notice Should be Expedited**

The limitations period applicable to other putative class members continues to run until they opt-in to this case or file their own lawsuit. *See* 29 C.F.R. § 790.21(b)(2)(ii). As a result, Plaintiff's request for early data is time sensitive, both to ensure that putative class members are afforded an opportunity to timely preserve their rights, and to facilitate efficient and swift litigation. Accordingly, Plaintiff requests that the Court enter an Order expediting the notice and the discovery processes relating to this Motion for Conditional Certification.

In *Hoffman-La Roche, Inc.*, the Supreme Court ruled that district courts are authorized to compel employers to provide names and addresses of potential Plaintiffs through the pretrial discovery process. 493 U.S. at 170. The Supreme Court also held that this authority includes sending court-authorized consent forms to potential Plaintiffs. *Id.* Court authorization of notice serves the legitimate goals of avoiding a multiplicity of duplicative suits and of setting cutoff dates

to expedite disposition of the action. *Id.* at 172-73. As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See id*. at 165; *see also Dean v. W. Aviation, LLC*, 2018 WL 1083497 at *3 (S.D. Fla. Feb. 28, 2018) (expedited discovery from defendants, consisting of names, addresses, and e-mail addresses of all individuals within the class was "reasonable and necessary to provide appropriate notice to all potential opt-in plaintiffs"); *Pares v. Kendall Lakes Auto*., LLC, 2013 WL 3279803 (S.D. Fla. July 27, 2013); *Fantauzzi v. Agora Marketing Solutions, Inc.*, 2010 WL 2220246 at *3 (M.D. Fla. June 2, 2010).

Here, Plaintiff requests that the Court require Flanigan's to produce, within 10 calendar days of the Court's order granting this Motion, a complete list of all Servers and Bartenders—including their last known home address, cellular telephone number, e-mail addresses and the last four digits of social security numbers—who were ever employed by Defendant Flanigan's Management Services, Inc. at any time within the previous three (3) years. The data sought here has been required by other courts. *See Laos v. Grand Prize Motors, Inc.*, 2012 WL 718713 at *2 (S.D. Fla. March 6, 2012) (requiring defendants to produce to Plaintiff, within 15 days of conditional certification order, a complete list of all putative class members, including their last known home address, telephone number, e-mail addresses, and the last four digits of the social security number, taxpayer ID number, and financial account numbers, of employees); *see also Garcia*, 2019 WL 3457613 at *6 (ordering defendants to produce a list in Excel spreadsheet format containing the names of all individuals who worked for defendants, along with each person's last known address and e-mail address, within 10 calendar days of the order approving conditional certification).

**C.**     **Proposed Court-Approved Notice to Members of the Collective**

A copy of the proposed notice to be sent to potential opt-in plaintiffs is attached as **Exhibit 6.** Plaintiff's proposed notice is "timely, accurate, and informative." *See Hoffman-La Roche, Inc.*, 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing accurate and timely notice to employees concerning the pendency of the collective action, and should be adopted. Plaintiff seeks to provide e-mail and physical mailing of the notice via first class U.S. Mail with a self-addressed stamped envelope for members of the putative Collective to submit their consent forms. *See e.g., De Leon v. So. Transp. Grp., Inc.*, 2017 WL 2899977 at *1 (S.D. Fla. January 23, 2017); *Wright v. Waste Pro USA, Inc.*, Case No. 0:19-cv-62051-KMM, 2020 WL 8641581, *7 (S.D. Fla. Dec. 22, 2020) (permitting notice to be mailed via first class mail); *Laos*, 2012 WL 718713 at *6 (same); *Martinez v. DHL Express (USA) Inc.,* 2016 WL 455394, *9 (S.D. Fla. Feb. 5, 2016) (permitting e-mail notice **and** notice via first class mail with a pre-addressed and stamped return envelope); *Cooper v. E. Coast Assemblers, Inc.*, 2013 WL 308880 at *4 (S.D. Fla. Jan. 25, 2013) (same); *Wintjen v. Denny's, Inc.,* 2021 WL 5370047, *19 (W.D. Pa. November 18, 2021) ("providing servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry") (*citing Belt v. P.F. Chang's China Bistro*, *Inc.,* 2020 WL 3829026, *9 (E.D. Pa. July 8, 2020) (finding it is appropriate in the modern digital age to distribute notice by mail, e-mail, and text)).

Plaintiff also seeks an order from this Court requiring Defendant to conspicuously display Plaintiff's Proposed Notice and Consent to Join Forms notifying all current Servers and Bartenders of this lawsuit and their opportunity to join and further requiring Defendants to file a Notice of Compliance with an attached photograph showing that the notice has been properly posted. *See* Proposed Posting for Restaurants attached as **Exhibit 7**; *see also Didoni*, 327 F.R.D. at 481-82 ("It is not unusual for a court to require an FLSA defendant to post the Notice and Consent in its

break/lunch room or another place where the employees regularly gather"); *Wright,* 2020 WL 8641581, at *7 (requiring employer to post conspicuous notice and consent to join forms). Gampong confirms there are non-public spaces at the Coconut Grove Restaurant accessible by Bartenders and Servers where Defendants could display notice of this lawsuit. *See* **Ex. 1**, at ¶ 22. Upon information and belief, all twenty-five Restaurants have similar non-public spaces in which the notice to Servers and Bartenders may be displayed. Putative members of the collective will ostensibly visit the undersigned law firm's website when they receive mail and email notice. Therefore, Plaintiff seeks leave to display the same notice on his counsel's website to "facilitate swift and economic justice." *See Qiang Lu v. Purple Sushi, Inc.,* 447 F.Supp.3d 89, 97 (S.D.N.Y. 2020) (permitting Plaintiff's counsel to post notice on its website); **Ex. 7**.

If the Court orders Defendant Flanigan's to produce the Class Member contact list within 10 calendar days, Plaintiff requests a total of 110 calendar days from the date the Court grants conditional certification for class members to submit their Consents to Join to Plaintiff's Counsel (to allow 10 days for Defendant to furnish a comprehensive list of putative class information, 10 days for Plaintiff's Counsel to prepare the notices to be sent, and an additional ninety (90) days for class members to submit their Consents to Join). *See Flete v. All Am. Facility Maint., Inc.*, 2020 WL 5534270, *4 (S.D. Fla. July 13, 2020) (allowing 90-days to opt-in from the date Notice was sent); *Alequin v. Darden Rests., Inc.*, 2013 WL 3939373, *8 (S.D. Fla. July 12, 2013) ("Common practice provides an opt-in period of ninety days ..."); *Robinson*, 2016 WL 11528450, at *8 ("This Court has previously granted a ninety-day opt-in period."); *Pittman v. Comfort Sys. USA (SE), Inc.*, 2013 WL 525006, *2 (M.D. Fla. February 13, 2013) (court ordered 90-day notice period).

Finally, Plaintiff seeks leave to send a reminder notice at the half-way point in the notice period. *See* Reminder Notice, attached as **Exhibit 8.** Other courts have granted similar requests for

reminder notices to ensure putative class members are aware of their rights and the time within which to exercise same. *See McClean*, 2018 WL 8578016, at *4 (permitting reminder notice at half-way point); *Martinez*, 2016 WL 455394 at *9 (allowing reminder postcard 30 days after the notice was approved); *Caamano v. 7 Call Center Inc.*, 2016 WL 4704934, *4 (S.D. Fla. September 8, 2016) (follow-up reminder permitted); *Wright,* 2020 WL 8641581, at *7 (same).

## V.      CONCLUSION

Flanigan's has a common corporate policy to prevent hourly employees from incurring overtime and punishing supervisors who allowed hourly employees to incur overtime. With that incentive structure, Flanigan's managers throughout the company forced hourly employees to clock out and continue working rather than permit them to record overtime hours. That common practice led to common violations of the FLSA for Servers and Bartenders across the Flanigan's restaurant group, and employees have demonstrated their eagerness to recover pay they should have received. Accordingly, the Court should grant conditional certification.

## <u>CERTIFICATE OF CONFERRAL</u>

As required by Local Rule 7.1(a)(2), undersigned counsel hereby certifies that he has conferred with counsel for Defendants via videoconference on April 9, 2025 in a good faith effort to resolve the issues raised in the motion. Defendants' counsel indicated that the relief requested in this motion is opposed.

*[signature block on following page]*

Respectfully submitted this 25th day of April, 2025.

*s/ Alexander C. Meier*
Lydia J. Chastain (*pro hac vice*)
Alexander Meier
Fla. Bar No. 1011557
LEE MEIER LAW FIRM
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 474-7628
lchastain@leemeier.law
ameier@leemeier.law

Elliot J. Siegel (*pro hac vice*)
KING & SIEGEL LLP
724 South Spring Street, Suite 201
Los Angeles, California 90014
elliot@kingsiegel.com
tel: (213) 465-4802
fax: (213) 465-4803

**COUNSEL FOR PLAINTIFF AND THE
COLLECTIVE/PUTATIVE CLASSES**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 25, 2025, I filed a copy of the foregoing via CM/ECF, which will automatically send notice to all counsel of record.

*s/ Alexander C. Meier*
Alexander Meier