# **EXHIBIT 5**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:25-cv-21494-KMM

AL NAWAS GAMPONG, on behalf of )
himself and all those similarly situated )
individuals, )
                                               )
        Plaintiff, )
v. )
                                               )
FLANIGAN'S MANAGEMENT )
SERVICES, INC. and RICHARD EATON, )
                                               )
        Defendants. )

### DECLARATION OF JENNIE NICHOLAS

I, Jennie Nicholas, submit the following declaration in support of Plaintiff Al Nawas Gampong's motion for conditional certification.

1. I am over 18 years of age, reside in Miami, Florida, and have personal knowledge of the facts stated herein.

2. In early 2020, I was hired to work as a server at the Flanigan's Seafood Bar and Grill in Westchester. After only a few weeks, I got Covid and was out of work for several weeks. When I returned to work, almost immediately I broke my toe and was unable to continue working as a server.

3. My managers then offered me a position as Take-Out/Runner, a job I could perform even as my toe healed. I worked in this position at the Westchester location for about six months.

4. In early 2021, Flanigan's Corporate Supervisor Carla offered me a position as a salaried Assistant Manager at the Westchester location. Carla told me I would be working about

1

50 hours a week for a salary of $55,000/year, and that I would not be eligible for overtime pay. I was excited to be in management and did my best.

5. Once I begam working as an Assistant Manager at the Westchester location, I was working way more than 50 hours a week. I was working more like 60 to 65 hours a week. I asked Flanigan's Corporate Supervisor Carla for a raise to $65,000/year because I was working so many hours. Carla verbally approved this adjustment in my salary; however, when I got my W2 at the end of my first year, I could tell that Flanigan's was not paying me what I had been promised.

6. In February or March of 2022, I was transferred from the Westchester location to the Pinecrest location. I worked as Assistant Manager at the Pinecrest location for about eight months, until mid-December 2022.

7. The management structure at the Westchester and Pinecrest locations was the same, and I understand that all Flanigan's locations had a similar management structure: Each Flanigan's restaurant has one General Manager and four or five Assistant Managers that report to the General Manager. There are three shifts an Assistant Manager must work: the daytime manager, the middle manager, and the nighttime manager. The middle manager overlaps with the nighttime manager, but leaves at 9 p.m. After 9 p.m., the nighttime manager is responsible for all the servers, all three bartenders, and the entire kitchen staff. Assistant Manager – especially the nighttime manager shift – is a really hard job.

8. At both the Westchester and Pinecrest locations, the General Manager, Assistant Managers, and Flanigan's corporate management stressed the importance of keeping labor costs low by not allowing hourly staff to work overtime. Flanigan's corporate office really stressed that all managers were responsible for making sure hourly workers didn't clock overtime.

2

9. We had weekly management meetings on Fridays. At these meetings, the General Manager would tell us to make sure hourly staff did not clock more than forty hours. The General Manager told us to log out the hourly staff even if they weren't done with their closing work rather than let them overtime. If a staff member clocked more than forty hours, we – the middle managers – could be written up. If you got written up a lot, you were eligible to be fired. The General Manager told us to punish staff members who clocked more than forty hours by scheduling them for only 26 hours the following week.

10. Flanigan's had a policy that tied middle management bonuses to staff overtime and labor costs. In other words, if an Assistant Manager allowed staff on her shift to incur overtime pay, that Assistant Manager would be penalized under a point system. If the Assistant Manager had a certain number of points, Flanigan's wouldn't give that Manager a bonus that year.

11. As an Assistant Manager, I checked every staff member's hours at the beginning of each shift and would make a note of when they needed to clock out to remain under forty hours.

12. I am aware that multiple Flanigan's managers, both General Managers and Assistant Managers, encouraged hourly staff to clock out if they were getting close to forty hours, even if they had to stay and finish their cleaning duties off the clock. I did not participate in this behavior because I knew it was against the law, but I personally observed other managers at both Pinecrest and Westchester telling hourly workers, including Servers and Bartenders, to clock out when they were close to forty hours and to keep working.

13. Flanigan's corporate office motivates and controls its managers working in the individual locations with a "point system" that determines bonuses. All the Flanigan's restaurants run by the same book and have to meet the same standards regarding labor costs and overtime.

14. I put in my notice and resigned in December 2022. I was tired of the long hours and I wasn't willing to bend the law as necessary to get a bonus.

I declare under penalty of perjury (28 U.S.C. § 1746) that the foregoing is true and correct.

Executed on April 23, 2025.

NAME: ___J. Nicholas___
JENNIE NICHOLAS