UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:25-cv-21494-KMM

Al Nawas Gampong, on behalf of himself and all those similarly situated individuals,

    Plaintiff,

  v.

Flanigan's Management Services, Inc. and Richard Eaton,

    Defendants.

**(Class Action and Collective Action)**

### PLAINTIFF AL NAWAS GAMPONG'S STATEMENT OF FLSA CLAIMS

Plaintiff Al Nawas Gampong and the opt-in plaintiffs [ECF No. 15], through undersigned counsel and pursuant to the Court's order dated April 7, 2025 [ECF No. 8], provide the following statement of FLSA claims.

**Plaintiff Al Nawas Gampong**

Gampong states that he seeks to recover unpaid wages based on two distinct bases. First, Gampong seeks to recover unpaid overtime. Flanigan's required Gampong and other similarly situated individuals to work unpaid overtime by requiring them to perform pre-shift work and post-shift work. At the direction of Flanigan's management, Gampong and other similarly situated employees would clock out or delay their clock in to avoid incurring overtime. Gampong does not currently have access to his clock-in/clock-out records from Flanigan's timekeeping system, but he asserts that this system will show management approval or adjustments to time worked to remove overtime hours.

Gampong states that he worked approximately 45-90 minutes per shift of off-the-clock work. Based on scheduling emails, Gampong was scheduled for 139 shifts during his employment with Flanigan's. Gampong received a reduced minimum wage of $8.98 from June 3, 2024 to September 29, 2024, which increased to $9.98 or $10.00 from September 30, 2024 to the present, excluding a portion of his hours where he was paid $12 per hour before September 30, 2024 or $13 per hour after September 30, 2024. To do so, Flanigan's availed itself of the $3.02 hourly tip credit available to tipped employees.

However, Flanigan's cannot claim this tip credit for all hours worked because Gampong spent more than 20% of his work hours performing non-tipped work and performed non-tipped work for more than 30 consecutive minutes.

Gampong has been underpaid in the amount of $3.02 per hour because he should have received the full, untipped Florida minimum wage for the 20% or more of his work time in which he was consistently performing non-tipped work. This affected approximately 186 hours worked by Mr. Gampong.

For another segment of his work, Gampong was underpaid in the amount of $12 per hour from June 3, 2024 to September 29, 2024 and in the amount of $13 per hour from September 30, 2024 to the date of this notice because Flanigan's required Mr. Gampong to perform off-the clock work by clocking out for work ancillary to his server duties, such as refilling condiments, cleaning, or cleaning and wrapping silverware. This affected approximately 300 hours worked by Mr. Gampong.

These failures to pay minimum wage occurred throughout the entirety of his employment, from June 15, 2024 to the date of this notice for each workday worked by Gampong.

Gampong estimates that the total amount of unpaid minimum wages related to the improper tip credit is $561.72, representing a $3.02 per-hour difference between his paid wage and the statutory Florida minimum wage, multiplied by the 186 hours worked by Gampong doing non-tipped work between June 15, 2024 and the date of his separation from Flanigan's.

Gampong estimates that the total amount of unpaid minimum wages related to the improper off-the-clock work is $3,750.00, representing a $12 or $13 hourly rate (as applicable based on Florida's in-effect minimum wage), multiplied by each off-the-clock hour worked by Mr. Gampong between June 15, 2024 and the date of this notice where he did not receive compensation for the work he was performing.

Gampong estimates that the total amount of unpaid overtime at $1,440, representing approximately five hours of unpaid overtime during weeks where Gampong was scheduled for 36 hours or more. Gampong is also entitled to liquidated damages for the above unpaid wages, as well as his reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages is $8,339.14, plus liquidated damages and attorneys' fees and costs.

**Opt in Plaintiffs**

To date, five additional plaintiffs have opted-in to this litigation. They, like Plaintiff Gampong, also seek back wages for unpaid overtime, minimum wage, and for the difference between minimum wage and the subminimum wage for weeks in which they spent more than 20% of their time performing non-tipped work. These five additional opt-in plaintiffs are all former employees of Flanigan's and have limited access to payroll records from their employment.[1]

---

[1] As of the time of this statement, Plaintiff's counsel has not received records from Flanigan's and has obtained partial scheduling and paycheck records. Plaintiff's counsel reserves the right to revise these calculations after receiving pay records from Flanigan's.

Nonetheless, using these plaintiffs' own recollection, undersigned counsel has endeavored to estimate the back wages owed to these plaintiffs. Upon information and belief, Defendants likely have records from which more accurate estimates may be made for other hourly employees at the Coconut Grove restaurant and at all other Flanigan's locations.

**Rachel Diaz**

Opt-In Plaintiff Rachel Diaz worked as a tipped employee at Flanigan's from April 14, 2024 through August 21, 2024. She worked four shifts a week and estimates that she worked 45 minutes of off-the-clock side work each shift to keep from recording overtime. Ms. Diaz estimates she worked three hours of unpaid overtime a week for the eighteen weeks she worked at Flanigan's. In total, she worked 54 hours of uncompensated overtime, for which she must be compensated at 1.5 times the applicable state minimum wage, *i.e.*, $12 x 1.5 = $18. In total, she is owed $972 in overtime wages. In addition, Ms. Diaz worked more than 20% of her time doing non-tipped side work. For purposes of a reasonable estimate, she estimates she worked 9 hours a week at the sub-minimum wage, which should have been paid at full minimum wage. Over 18 weeks, that amounts to 162 hours for which $3.02/hour must be paid; $489.24 in minimum wage back wages owed.

Ms. Diaz is also entitled to liquidated damages for the above unpaid wages, as well as her reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages owed to Ms. Diaz is $1,461.24, plus liquidated damages and attorneys' fees and costs.

**Larissa Macko**

Opt-In Plaintiff Larissa Macko worked as tipped employee at Flanigan's from December 2023 through February 2024. She estimates that she worked off-the-clock doing side work for as

much as an hour a shift. For purposes of a good faith estimate, Ms. Macko estimates she worked three hours of unpaid overtime a week for the 12 weeks she worked at Flanigan's. In total, she worked 36 hours of uncompensated overtime, for which she must be compensated at 1.5 times the applicable state minimum wage, i.e., $12 x 1.5 = $18. In total, she is owed $648 in overtime wages. In addition, Ms. Macko worked more than 20% of her time doing non-tipped side work and was paid the sub-minimum wage for all hours worked. For purposes of a reasonable estimate, Ms. Macko estimates she worked approximately 9 hours a week at the sub-minimum wage, which should have been paid at full minimum wage. Over 12 weeks, that amounts to 108 hours for which $3.02/hour must be paid; $326.16 in minimum wage back wages owed.

Ms. Macko is also entitled to liquidated damages for the above unpaid wages, as well as her reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages owed to Ms. Macko is $974.16, plus liquidated damages and attorneys' fees and costs.

**Maxwell Morris**

Maxwell Morris worked as a tipped employee at Flanigan's from August 2023 through October 2024. He was scheduled to work 35 to 40 hours per week, but Flanigan's required him to work at least 45 to 90 minutes each shift doing off-the-clock side work in addition to his scheduled hours. Because of this practice, he worked more than 40 hours per week in many weeks, but Flanigan's did not record or pay him for these overtime hours. For purposes of a reasonable estimate, Mr. Morris worked four hours of unpaid overtime a week for the sixty weeks he worked at Flanigan's. In total, he worked 240 hours of uncompensated overtime, for which he must be compensated at 1.5 times the applicable state minimum wage, which changed twice during his tenure at Flanigan's:

- August 2023 – September 29, 2023 (6 weeks – 24 hours OT): $11 x 1.5 = $16.50/ot hour.

- Sept. 30, 2023-September 29, 2024 (52 weeks- 208 hours OT): $12 x 1.5 = $18/ot hour.

- September 30, 2024 – October 2024 (2 weeks-8 hours OT): $13 x 1.5 = $19.50/ot hour.

In total, Mr. Morris is owed $4,296 in overtime wages. In addition, Mr. Morris worked more than 20% of his time doing non-tipped side work and was paid the sub-minimum wage for all hours worked. For purposes of a reasonable estimate, Mr. Morris estimates he worked 9 hours a week at the sub-minimum wage, which should have been paid at full minimum wage. Over 60 weeks, that amounts to 540 hours for which $3.02/hour must be paid; $1,630.80 in minimum wage back wages owed.

Mr. Morris is also entitled to liquidated damages for the above unpaid wages, as well as his reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages owed to Mr. Morris is $5,926.80, plus liquidated damages and attorneys' fees and costs.

**Nathalie Gomez**

Opt-in Plaintiff Nathalie Gomez worked as a tipped employee at multiple Flanigan's locations between April 2019 through January 2025. Relevant to this action, she worked April 25, 2022 through January 2025, during which time, on average, she worked 45 to 90 minutes off the clock each shift, doing non-tipped side work. For purposes of a reasonable estimate, Ms. Gomez worked four hours of unpaid overtime a week for the one hundred and forty weeks she worked at Flanigan's. In total, she worked 560 hours of uncompensated overtime, for which she must be compensated at 1.5 times the applicable state minimum wage, which changed three times during his tenure at Flanigan's:

- April 25, 2022 – September 29, 2022 (22 weeks – 88 hours OT): $10 x 1.5 = $15/ot hour.

6

- September 30, 2022 - September 29, 2023 (52 weeks – 208 hours OT): $11 x. 1.5 = $16.5/ot hour

- September 30, 2023 – September 29, 2024 (52 weeks – 208 hours OT): $12 x 1.5 = $18/ot hour.

- September 30, 2024 – January 2025 (16 weeks – 64 hours OT): $13 x 1.5 = $19.50/ot hour.

In total, Ms. Gomez is owed $9,744 in overtime wages. In addition, Ms. Gomez worked more than 20% of her time doing non-tipped side work and was paid the sub-minimum wage for all hours worked. For purposes of a reasonable estimate, Ms. Gomez estimates she worked 9 hours a week at the sub-minimum wage, which should have been paid at full minimum wage. Over 142 weeks, that amounts to 1,278 hours for which $3.02/hour must be paid; $3,859.56 in minimum wage back wages owed.

Ms. Gomez is also entitled to liquidated damages for the above unpaid wages, as well as her reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages owed to Ms. Gomez is $13,603.56, plus liquidated damages and attorneys' fees and costs.

**Brianna Everett**

Opt-in Plaintiff Brianna Everett worked as a tipped employee at Flanigan's from November 2023 through November 2024. On average, she worked 30 to 90 minutes off the clock each shift, doing non-tipped side work. For purposes of a reasonable estimate, Ms. Gomez worked four hours of unpaid overtime a week for the fifty-two weeks she worked at Flanigan's. In total, she worked 208 hours of uncompensated overtime, for which she must be compensated at 1.5 times the applicable state minimum wage, which changed once during her tenure:

- November 2023 – September 29, 2024 (46 weeks – 184 hours OT): $12 x 1.5 = $18/ot

7

hour.

- September 30, 2024 – November 2024 (6 weeks – 24 hours OT): $13 x 1.5 = $19.50/ot hour.

In total, Ms. Everett is owed $3,780 in overtime wages. In addition, Ms. Everett worked more than 20% of her time doing non-tipped side work and was paid the sub-minimum wage for all hours worked. For purposes of a reasonable estimate, Ms. Everett worked 9 hours a week at the sub-minimum wage, which should have been paid at full minimum wage. Over 52 weeks, that amounts to 468 hours for which $3.02/hour must be paid; $1,413.36 in minimum wage back wages owed.

Ms. Everett is also entitled to liquidated damages for the above unpaid wages, as well as her reasonable attorneys' fees and costs. Thus, the total amount of alleged unpaid wages owed to Ms. Everett is $5,193.36, plus liquidated damages and attorneys' fees and costs.

**Attorneys' Fees**

The amount of attorneys' fees incurred to date is $62,795, and the attorney rates for this matter are:

- Alex Meier - $700 with 26.6 hours ($18,620)
- Lydia Chastain - $650 with 60.5 hours ($39,325)
- Elliot Siegel - $825 with 5.6 hours ($4,850)

The amount of costs to date are $1,055 for service of the summons and complaint and the filing of the complaint.

Gampong states that, contemporaneously with filing this statement, he has produced documents supporting his claims to Defendants.

Respectfully submitted, this 28th day of April, 2025.

*s/ Alexander C. Meier*
Lydia J. Chastain (admitted *pro hac vice*)

Alexander Meier
Fla. Bar No. 1011557
LEE MEIER LAW FIRM
695 Pylant Street NE, Suite 105
Atlanta, Georgia 30306
Telephone: (404) 474-7628
lchastain@leemeier.law
ameier@leemeier.law

Elliot J. Siegel (admitted *pro hac vice*)
KING & SIEGEL LLP
724 South Spring Street, Suite 201
Los Angeles, California 90014
elliot@kingsiegel.com
tel: (213) 465-4802
fax: (213) 465-4803

**COUNSEL FOR PLAINTIFF AND THE COLLECTIVE/PUTATIVE CLASS**

## **CERTIFICATE OF SERVICE**

      I certify that, on April 28, 2025, a copy of the foregoing has been filed by CM/ECF, which will send notice to all counsel of record.

*s/ Alexander C. Meier*
Alexander Meier
